# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| In re:<br><br>THOBURN LIMITED PARTNERSHIP,<br>JOHN M. THOBURN,<br>HUNTER MILL EAST, L.L.C. and<br>HUNTER MILL WEST, L.C.,<br><br>    Debtors. | Case No. 12-11243-RGM<br>(Chapter 11) |
| In re:<br><br>BDC CAPITAL, INC.,<br><br>    Debtor. | Case No. 11-15340-RGM<br>(Chapter 11) |

## MEMORANDUM OPINION

The question presented in these chapter 11 cases is who may vote on a chapter 11 plan and make an §1111(b) election: the creditor or the bank with a security interest in the creditor's claim.

## The Parties and The Debt Structure

Thoburn Limited Partnership, Hunter Mill East, L.L.C. and Hunter Mill West, L.C. (the "Thoburn Entities"),[1] Mr. Thoburn and Mr. Thoburn's mother, who is not in bankruptcy, own 16 parcels of substantially contiguous land[2] in Fairfax County, Virginia, aggregating about 75 acres. The assemblage is well-situated on the Dulles Toll Road and near a future

---

[1]The chapter 11 cases of the three Thoburn Entities have been substantively consolidated and are being jointly administered with Mr. Thoburn's individual chapter 11 case. The Thoburn Entities are owned by various members of Mr. Thoburn's extended family.

[2]One parcel is separated from the other 15 by a parcel not involved in this bankruptcy case. The remaining 15 parcels are bisected by Hunter Mill Road.

1

metro station on the metro line that will connect Dulles International Airport to Washington, D.C. Construction on the metro line is underway half-way to the airport with the other half scheduled for completion within several years.

BDC Capital is both a borrower and a lender. It borrowed over $8.9 million from three banks and lent it in three separate transactions to Thoburn Limited Partnership, Hunter Mill East, or Hunter Mill West. Each loan was secured by a first deed of trust on parcels that the particular entity owned and was funded by a different bank. Each bank had its own security interest in the note, deed of trust and loan documents between the applicable entity and BDC Capital. The Thoburn Entities collectively owe BDC Capital about $16.2 million.

BDC Capital's loans to the three banks were in default when it filed bankruptcy and the banks had possession of all of the Thoburn Entities loan documents, including the original Thoburn Entities notes which had been endorsed to the banks.

## Proposed Chapter 11 Plan

Mr. Thoburn and the Thoburn Entities filed a joint chapter 11 plan which is predicated on the sale of the assembled property to a national builder.[3] The plan envisions a new loan that will pay all secured lenders in full upon confirmation.[4] The unsecured creditors will be paid in full after the property is rezoned and the contract goes to closing. This may take several years. The new lender will have a first lien on all the real property.

---

[3] The contract of sale has been fully negotiated and executed.

[4] Some secured lenders are undersecured. Their claims will be bifurcated into secured and unsecured portions. Only the secured portions will be paid upon confirmation.

The three banks are TD Bank, First Virginia Community Bank and Branch Banking and Trust ("BB&T"). BB&T sold its loan to HM Investments ("HMI") after the filing of the bankruptcy case.[5] TD Bank and First Virginia Community Bank appear to be fully secured and would likely be paid in full from the take-out lender. HMI is likely undersecured.[6] It would be paid most of its debt upon confirmation and retain an unsecured deficiency claim. BDC Capital would be left with an unsecured claim of $7.22 million.[7]

## Discussion

The issue presented is who gets to vote on the plan. Is it BDC Capital, the party to whom the Thoburn Entities are indebted, or TD Bank, First Virginia Community Bank and HMI who have security interests in the Thoburn Entities notes and loan documents?

Federal Rule of Bankruptcy Procedure 3001(e)(3) provides the rule for the decision. It states:

> **Transfer of claim for security before proof filed.** If a claim . . . has been transferred for security before proof of the claim has been filed, the transferor or transferee or both may file a proof of claim for the full amount. The proof shall be supported by a statement setting forth the terms of the transfer. If either the transferor or the transferee files a proof of claim, the clerk shall immediately notify the other by mail of the right to join in the filed claim. If both transferor and transferee file proofs of the same claim, the proofs shall be consolidated. If the transferor or transferee does not file an agreement regarding its relative rights respecting voting of the claim, payment of

---

[5] HM Investments ("HMI") is owned by another national builder who unsuccessfully sought to purchase the property from the debtor and may still be interested in purchasing it.

[6] The parties suggest that BDC Capital owes HMI about $5.23 million, but the property securing the loan is worth $4.6 million in its "as is" state, that is, before rezoning. In this case, HMI would be paid about $4.6 million upon confirmation and $630,000 after the property is rezoned and the contract closes.

[7] The Thoburn entities dispute the amount due to BDC Capital. Their objection to BDC Capital's proof of claim is scheduled for a hearing prior to the confirmation hearing.

3

dividends thereon, or participation in the administration of the estate, on motion by a party in interest and after notice and a hearing, the court shall enter such orders respecting these matters as may be appropriate.

The Rule provides that BDC Capital and each of the banks may file a proof of claim in the Thoburn Entities cases. The proofs of claim should include a copy of the agreement regarding the "relative rights respecting voting of the claim, payment of dividends thereon, or participation in the administration of the estate." These documents determine – between BDC Capital and the applicable bank – who votes on the plan and who decides whether to make the §1111(b) election. The §1111(b) election is an aspect of participation in the administration of the estate.

The rule is consistent with 11 U.S.C. §1126(a) which governs acceptance of a plan. It states that the "**holder** of a claim . . . may accept or reject a plan." (emphasis added.) Class acceptance is determined by the vote of the holders of claims. 11 U.S.C. §1126(c). The requirements for confirmation of a plan speak to both class acceptance and to rights of individual holders of claims. See 11 U.S.C. §1129(a)(7) and (9). If each class of creditors and interests does not accept the plan under §1129(a)(8), the plan proponent must comply with 11 U.S.C. §1129(b) which again gives individual holders of claims certain rights. In each instance, as stated in Fed.R.Bankr.P. 3001(e), the holder of the claim votes. The election under 11 U.S.C. §1111(b) is part of the participation in the administration of the case and of the acceptance or rejection of a proposed plan of reorganization. The election is made by the affected class as a whole on the vote of the holders of claims in that class.[8]

---

[8] A §1111(b) election is often spoken of as an individual right of a creditor, not as a class right. As a practical matter, most claims secured by real estate are separately classified because each is dissimilar to other secured claims and a single creditor exercises the class right to make a §1111(b) election.

Rule 3001(e) provides that the loan documents between BDC Capital and its banks determine who has the right to file a proof of claim, to vote, and to participate in the administration of the case (in this instance to make or refrain from making a §1111(b) election). This is in accord with the Bankruptcy Code. A claim is defined in 11 U.S.C. §101(5) as a "right of payment." The claims in this case are the obligations evidenced by the notes made by the Thoburn Entities to BDC. However, the right to the payment from the notes may be elsewhere. It is necessary to examine the loan documents to determine who has the right of payment.

TD Bank and First Virginia Community Bank both included the applicable loan documents in their proofs of claims.[9] They provide that upon default all payments are to be made to the respective bank, not to BDC Capital.[10] Both loans were in default when BDC filed bankruptcy and the default provisions were in effect at that time. Thus, the right to the payment on the note is with TD Bank and First Virginia Community Bank under the loan documents as a result of BDC Capital's default. They hold the notes and the right of payment is to them. It follows that TD Bank and First Virginia Community Bank have the right to vote on the proposed plan of reorganization and to make or refrain from making the §1111(b) election.

---

[9] Rule 3001(e) applies to the bank's liens on BDC Capital's claim in the Thoburn Entities cases but not to their claims against BDC Capital in its case. The banks should file a proof of claim in BDC Capital's case for the claim each has against BDC Capital and an additional proof of claim in the Thoburn Entities cases. The amount of the proof of claim filed in the Thoburn Entities cases should be for the entire claim that BDC Capital has against the Thoburn Entities notwithstanding that the bank's interest in BDC Capital's claim may be less than BDC Capital's claim against the Thoburn Entities. The proof of claim filed in the Thoburn Entities cases should comply with Fed.R.Bankr.P. 3001(e).

[10] The right of payment directly from the Thoburn Entities arose upon default. Had BDC Capital not been in default, the result would be different.

HMI's rights cannot be determined on the present record.  BB&T filed the proof of claim that it transferred to HMI.  It  included documentation showing confessions of judgment but did not include the underlying loan documents.[11]  The documents attached to HMI's proof of claim and the Stipulation and Consent Order resolving HMI's motion for relief from the automatic stay are helpful to the resolution of the present motion but are not dispositive.  The proof of claim does not contain all of the documents required by Rule 3001(e) and it is not possible to determine the respective rights between HMI as BB&T's transferee and BDC Capital.  HMI or BDC Capital should promptly amend their respective proofs of claim to include the applicable documents so that the matter may be resolved.

## Conclusion

TD Bank and First Virginia Community Bank have the right to vote on the proposed chapter 11 plan and to make or refrain from making a §1111(b) election.  HMI or BDC Capital must promptly amend its proof of claim so that the court may determine the respective rights of the parties.

Alexandria, Virginia
August 1, 2013

/s/ Robert G. Mayer
Robert G. Mayer
United States Bankruptcy Judge

---

[11] No lien appears to have arisen from the confession of judgments.

Copy electronically to:

Madeline A. Trainor
Jack Frankel
Michael J. Holler an
Lawrence Allen Katz
Justin F. Paget

18684